WILLIAM V. JOHNSON *et al.*, Appellants, v. MARSHALL FIELD AND CO. *et al.*, Appellees.—RONALD S. BAILIS *et al.*, Appellants, v. GOLDBLATT BROTHERS, INC., *et al.*, Appellees.

*Opinion filed May 29, 1974.*

GOLDENHERSH, J., took no part.

Frank Glazer and Stewart I. Gartner, both of Chicago, for appellants.

Wilson & McIlvaine, of Chicago (Kent Chandler, Jr. and Robert F. Forrer, of counsel), for appellee Marshall Field and Co.

McDermott, Will & Emery, of Chicago (Hamilton Smith and Larry E. Ribstein, of counsel), for appellees Sears, Roebuck and Co. and Jewel Companies, Inc.

Hopkins, Sutter, Owen, Mulroy & Davis, of Chicago (Thomas R. Mulroy, Robert W. Patterson, and Michael F. Duhl, of counsel), for appellee Montgomery Ward & Co., Inc.

Sidley & Austin, of Chicago (J. Robert Barr and J.

Douglas Donenfeld, of counsel), for appellees Carson Pirie Scott & Co. and National Tea Co.

Bernard Rosencranz, of Chicago, for appellee Goldblatt Bros., Inc.

Arvey, Hodes & Mantynband, of Chicago (Herman Smith, of counsel), for appellees The Great Atlantic & Pacific Tea Company, Inc. and Walgreen Co.

Fiffer & D'Angelo, of Chicago (Allan N. Lasky, of counsel), for appellee Steinberg-Baum Co.

Crowley, Barrett & Karaba, of Chicago (Edward W. Barrett, of counsel), for appellee Dominick's Finer Foods, Inc.

Morton Siegel, of Chicago, for appellee Armanetti, Inc.

Williams and Leonard, Ltd., of Chicago (Robert F. Sharp, of counsel), for appellee F. W. Woolworth Co.

James E. Manning, of Chicago, for appellee High-Low Foods, Inc.

Jack Edward Dwork, of Chicago, for appellee Kroch's & Brentano's, Inc.

MR. JUSTICE WARD delivered the opinion of the court:

William Johnson, one of the plaintiffs here, filed a complaint in the circuit court of Cook County, individually and in behalf of the class of persons who purchased tangible personal property at retail in municipalities imposing a municipal retailers' occupation tax (MROT), against Marshall Field & Co., Sears Roebuck & Co., Jewel Companies, Inc., Montgomery Ward & Co., Inc., Carson Pirie Scott & Co. and National Tea Co. Ronald Bailis, the other plaintiff, filed a complaint, also individually and in behalf of all members of the same class, against Goldblatt

Brothers, Inc., The Great Atlantic & Pacific Tea Company, Inc., Walgreen Co., Steinberg-Baum Co., Dominick's Finer Foods, Inc., Armanetti, Inc., F. W. Woolworth Co., High-Low Foods, Inc., and Kroch's & Brentano's, Inc. Both complaints included allegations that the plaintiffs had purchased tangible personal property from the defendant retailers in municipalities imposing a MROT; that the defendants were authorized to and did collect in addition to the selling price a use tax on the purchases by the plaintiffs and the members of the plaintiffs' class, and that the defendants added to the amount of the use tax a sum of money equal to the MROT. The plaintiffs claimed that the addition of the sum of money representing the MROT constituted an unauthorized collection of the tax because the Municipal Retailers' Occupation Tax Act did not authorize this, and they further alleged that the addition of this amount to the use tax, without disclosing that retailers were not authorized "to collect" the MROT, was a violation of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1969, ch. 121½, par. 311 *et seq.*).

The first count of each complaint sought to enjoin the defendants from collecting from customers any amount in excess of the 4% use tax, and count II in each case sought to recover all sums the defendant retailers had received from customers to satisfy their MROT liability.

After consolidating the cases, the circuit court entered an order dismissing count II, and it struck paragraph 10 of count I, which alleged a violation of the Uniform Deceptive Trade Practices Act, for failure to state a cause of action. Subsequent to this action by the trial court, the legislature enacted the following amendment (Pub. Act 77–131) to the Municipal Retailers' Occupation Tax Act:

"Persons subject to any tax imposed pursuant to the authority granted in this Section may reimburse themselves for their seller's tax liability hereunder by separately stating such tax as an additional charge, which charge may be stated in combination, in a single amount, with State tax which sellers are required to collect under the

'Use Tax Act', pursuant to such bracket schedules as the Department may prescribe."

The preamble to the amendatory act stated:

"Preamble

This Act to amend the 'Municipal Retailers' Occupation Tax Act' and the 'Municipal Service Occupation Tax Act' expresses the intent of the General Assembly, and declares that intent to have been, since the inception of those Acts, that persons subject to the municipal retailers' occupation tax and Municipal Service Occupation Tax may reimburse themselves for their seller's or serviceman's tax liability under such taxes by separately stating the amount of such taxes as an additional charge."

Upon the enactment of the amendment, the circuit court dismissed the balance of count I, in which the plaintiffs sought an injunction. No appeal by the plaintiffs was taken from the dismissal of the first count of the complaints, but the plaintiffs appealed to the appellate court from the dismissal of count II. Count II contained an allegation of deceptive practices as well as a prayer to recover moneys. The appellate court affirmed the dismissal of the second count (8 Ill. App. 3d 937), and we granted leave to appeal.

The trial and appellate courts correctly held that the defendants were not without authority to pass on the burden of the MROT.

That authority is, of course, explicitly set out in the amendment (Pub. Act 77—131) to the MROT. In the preamble to the amendment the legislature declared that its intention since the enactment of the MROT had been to give such authority to retailers. This declaration by the legislature can properly be considered in determining the earlier legislative intention (*Lubezny v. Ball,* 389 Ill. 263, 266; *People ex rel. Dickey v. Southern Ry. Co.,* 17 Ill.2d 550, 554), although of course it is not conclusive.

Apart from this expression in the preamble, there is strongly persuading evidence that the legislature's intent had been to allow retailers to pass on the burden of the MROT.

The authority of a retailer to pass on the burden of the tax imposed under the companion Retailers' Occupation Tax Act is completely clear, and this was so prior to the enactment of the Use Tax Act (Ill. Rev. Stat. 1955, ch. 120, par. 439.1 *et seq.*) in 1955, which explicitly gave retailers this authority. (*Winter v. Barrett,* 352 Ill. 441, 456; *Vause & Striegel, Inc. v. McKibbin,* 379 Ill. 169, 170; see also *Harrison Sheet Steel Co. v. Lyons,* 15 Ill.2d 532, 535; *People ex rel. Holland Coal Co. v. Isaacs,* 22 Ill.2d 477; *First National Bank of Maywood v. Jones,* 48 Ill.2d 282, 288.) In *Holland* it was observed: "It is the common and accepted practice of persons subject to the retailers' occupation tax to quote and collect the tax separately from the selling price. In such circumstances the burden of the tax is shifted forward to the purchaser. The obvious purpose of the legislature in enacting the exemption was to protect governmental units and charities from the burden of the tax that is shifted to them." 22 Ill.2d 477, 480-481.

It is evident that the legislature contemplated that retailers would also pass on the burden of the MROT to customers. To illustrate, the Retailers' Occupation Tax Act, as early as 1955, defined "selling price" as "the consideration for a sale valued in money whether received in money or otherwise, *** but shall not include charges that are added to prices by sellers on account of the seller's tax liability under this Act, or on account of the seller's duty to collect, from the purchaser, the tax that is imposed by the Use Tax Act, or on account of the seller's tax liability under the Municipal Retailers' Occupation Tax Act." (Ill. Rev. Stat. 1957, ch. 120, par. 440.) It is obvious that the legislature considered, without disapproving, that retailers might add the amount of the MROT to the price "on account of the seller's tax liability under the Municipal Retailers' Occupation Tax Act." Too, section 6 of the Retailers' Occupation Tax Act was incorporated into the Municipal Retailers' Occupation Tax Act in 1955, which

section provides in part: "[N] o credit shall be allowed for any amount paid by or collected from any claimant unless it shall appear (a) that the claimant bore the burden of such amount and has not been relieved thereof nor reimbursed therefor and has not shifted such burden directly or indirectly through inclusion of such amount in the price of the tangible personal property sold by him or in any manner whatsoever; *** or (b) that he *** has repaid unconditionally such amount to his vendee (1) who bore the burden thereof and has not shifted such burden *** in any manner whatsoever." (Ill. Rev. Stat. 1955, ch. 120, par. 445.) It can be seen that the legislature plainly anticipated that retailers might pass on the burden of the MROT to their customers.

The Department of Revenue has construed the legislative intention to be that the retailer may pass on the burden of the MROT. For example, while the amendment (Pub. Act 77–131) to the Municipal Retailers' Occupation Tax Act set out above refers to bracket schedules that the Department of Revenue may prescribe, the publication of such schedules by the Department dates back to 1955. (The purpose of these schedules is described in the Use Tax Act (Ill. Rev. Stat. 1955, ch. 120, par. 439.3): "The Department [of Revenue] shall have the power to adopt and promulgate reasonable rules and regulations for the adding of such tax by retailers to selling prices by prescribing bracket systems for the purpose of enabling such retailers to add and collect, as far as practicable, the amount of such tax.") The Department's Use Tax Rule 4(5), first promulgated that year, indicated that the retailer had the option of passing on to customers the burden of the MROT. The rule has remained essentially unchanged since 1955 and now states: "If the retailer is also subject to a municipal or county retailers' occupation tax of 1% and elects to shift the burden of that tax to his customers while collecting the 4% use tax in the same

transactions, thus producing a total combined State and local tax rate of 5%, the following schedule shall be employed ***."

The Department's interpretation that the legislature contemplated that retailers might pass on the burden of the MROT is also illustrated by the Department's Retailers' Occupation Tax Article (3)(2) ("How to Avoid Paying Tax on State or Local Tax Passed on to the Purchaser"), which provides that when calculating gross receipts, "on the basis of which retailers' occupation tax liability must be computed, [sellers should] not include charges which are added to prices on account of the seller's Illinois retailers' occupation tax liability, or on account of the seller's liability under the Municipal Retailers' Occupation Tax Act, *** or on account of the seller's duty to collect the tax imposed by the Use Tax Act."

Too, the Department's Municipal Retailers' Occupation Tax Rule No. 1 states in part: "Any amount added to the selling price of tangible personal property by the seller because of a municipal retailers' occupation tax, or because of the Illinois retailers' occupation tax, or as Illinois use tax, *** and collected from the purchaser, shall not be regarded as a part of the seller's gross receipts that are subject to such municipal retailers' occupation tax. *** The municipal retailers' occupation tax is not a sales or a use tax, but is an occupation tax whose legal incidence is on the seller, even if the seller finds it necessary to shift the burden of such tax to his customers as a matter of economic necessity."

The interpretations of statutes by involved administrative bodies, such as the Department of Revenue, constitute, of course, an informed source for guidance when seeking to ascertain the legislature's intention when the statute was enacted. *Oscar L. Paris Co. v. Lyons,* 8 Ill.2d 590, 596.

We judge it is clear that the legislature at the time the Municipal Retailers' Occupation Tax Act was enacted

considered that retailers might pass on the burden of the tax to customers and that the legislature intended that this option be available for retailers.

From what we have said, it is obvious that the defendants have not been guilty of any violation of the Uniform Deceptive Trade Practices Act. Section 314(1) of the Act declares the obvious in stating that the Act does not apply to "conduct in compliance with the orders or rules of or a statute administered by a Federal, state, or local governmental agency." Ill. Rev. Stat. 1969, ch. 121½, par. 314(1).

For the reasons given, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.