PHILLIP E. LaPOINTE, Petitioner-Appellant, v. JAMES A. CHRANS, Warden, Joliet Correctional Center, Respondent-Appellee.

Second District No. 2—01—0593

Opinion filed May 14, 2002.—Rehearing denied June 14, 2002.

McLAREN, J., specially concurring.

Aldo E. Botti and Christian R. Rivera, both of Botti, Marinaccio & DeLongis, Ltd., of Oak Brook, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and William L. Browers and J. Paul Hoffmann, Assistant Attorneys General, of counsel), for appellee.

JUSTICE BYRNE delivered the opinion of the court:

Petitioner, Phillip E. LaPointe, an inmate in the Joliet Correctional Center, appeals the dismissal of his petition for a writ of *habeas corpus,* in which he alleges that his sentence of natural life imprisonment for first-degree murder violates *Apprendi v. New Jersey,* 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). After petitioner pleaded guilty, the trial court expressly found three aggravating factors that rendered him eligible for the life sentence: (1) the victim was killed during an armed robbery, (2) the crime was exceptionally brutal and heinous, and (3) the crime was cold, calculated, and premeditated. None of the factors were charged, but the armed robbery factor and the "brutal and heinous" factor were included in the admonitions issued under Supreme Court Rule 402(a) (177 Ill. 2d R. 402(a)). Moreover, the armed robbery factor was described in the factual basis for the plea.

On appeal, petitioner argues that (1) *Apprendi* applies retroactively to his *habeas corpus* proceeding, (2) he did not waive his constitutional claim when he pleaded guilty to the offense, and (3) he was denied his right under *Apprendi* to a jury determination beyond a reasonable doubt of all three aggravating factors. Respondent challenges each of these arguments and additionally asserts that, even if petitioner's sentence violates *Apprendi,* his claim is not cognizable under the Habeas Corpus Act (735 ILCS 5/10—101 *et seq.* (West 2000)). Pursuant to the recently decided supreme court cases of *Hill v. Cowan,* 202 Ill. 2d 151 (2002), and *People v. Jackson,* 199 Ill. 2d 286 (2002), we conclude that, when petitioner pleaded guilty, he waived his right to have a jury determine the three aggravating factors. Therefore, we affirm the order dismissing the petition for *habeas corpus* relief. Because we dispose of the appeal on the merits of the *Apprendi* claim, we reach no decision on whether a claim under *Apprendi* is cognizable in a *habeas corpus* proceeding or whether *Apprendi* applies retroactively to collateral proceedings.

## FACTS

On March 7, 1978, petitioner fatally shot and robbed a cab driver, and on June 16, 1978, he pleaded guilty to one count of first-degree murder (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a) (now 720 ILCS 5/9—1(a) (West 2000))). In exchange for the plea, the State dismissed two other charges, but the parties did not agree on a punishment.

The count to which petitioner pleaded guilty alleged that he, "without legal justification, and with the intent to kill Peter Moreno, Jr., performed the acts which caused the death of Peter Moreno, Jr., by shooting him in the head with a gun." At the guilty plea hearing, the trial court recited the charge and admonished petitioner that the of-

fense was punishable by a sentence of 20 to 40 years' imprisonment. Petitioner consented to the prosecutor's factual basis for the plea, which included in part the following information:

> "The evidence would indicate that *** defendant *** shot Peter Moreno, Jr. in the head and neck area twice with what turned out to be a .22 caliber revolver with a long barrel and a brownish looking handle.
>
> The evidence would also show that he took from Peter Moreno, Jr. an amount of money and some identification and that he returned later that same morning to David Cichelli at the service station, and told David Cichelli that, 'Well I did it. I killed him,' or words to that effect."

The court admonished petitioner that a sentence of natural life imprisonment could be imposed if:

> "the court finds either that the murder [petitioner] committed was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or [petitioner] was 18 years or older at the time of the crime and the person murdered was killed during the course of an armed robbery and was actually killed by [petitioner] and not some other party to the crime or simply as a consequence of that crime, and [petitioner] killed that person intentionally or with the knowledge that the acts which caused the death created a strong probability of death or great bodily harm."

Petitioner stated that he understood that a life sentence was "possible," and the court accepted his plea.

After an evidentiary hearing, the trial judge reviewed the transcript and commented on the aggravating factors in sections 9—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 9—1(b) (now 720 ILCS 5/9—1(b) (West 2000))) and the mitigating factors in section 5—5—3.1 of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.1 (now 730 ILCS 5/5—5—3.1 (West 2000))). *People v. LaPointe*, 88 Ill. 2d 482, 491 (1981). He noted that defendant was 18 years old at the time of the murder and that he had a significant history of prior criminal activity. The judge further found that petitioner committed the murder in the course of another felony, the armed robbery of the victim. See Ill. Rev. Stat. 1977, ch. 38, par. 9—1(b)(6). The judge also found that petitioner's conduct was "brutal and heinous" and "cold and calculated" (see Ill. Rev. Stat., 1978 Supp., ch. 38, pars. 1005—8—1(a)(1), 9—1(b)) and concluded:

> " 'So, the Court, in taking into consideration the heinous nature of this crime, its brutality, its cold, calculating, cold-blooded act which is indicative of the wanton cruelty, there was indication it was premeditated and postmeditated, the Court took into consideration

the presentence investigation which more or less correlated everything that was in the transcript and the testimony on the hearing in aggravation and mitigation, and the Court has taken into consideration the arguments of counsel at the hearing in aggravation and mitigation, the fact that the defendant was over 18 years of age, and therefore, it shall be the judgment of this court that the defendant be remanded to the custody of the Sheriff of Du Page County, and thence to the custody of the Illinois Department of Corrections, where he shall serve a life sentence, without parole.' " *LaPointe*, 88 Ill. 2d at 491-92.

On direct appeal, this court concluded that petitioner's sentence was excessive and reduced it to a 60-year prison term. *People v. LaPointe*, 85 Ill. App. 3d 215, 224 (1980). Our supreme court subsequently reversed this court's judgment and affirmed petitioner's conviction and natural life sentence. *LaPointe*, 88 Ill. 2d at 502, *rev'g* 85 Ill. App. 3d 215 (1980). In its disposition, the supreme court summarized the evidence presented at the sentencing hearing. *LaPointe*, 88 Ill. 2d at 487-90.

On January 12, 2001, petitioner initiated *habeas corpus* proceedings in which he alleges that the *Apprendi* decision is an "act, omission or event" that entitles him to discharge from prison. See 735 ILCS 5/10—124(2) (West 2000). Respondent filed a motion to dismiss the petition under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)), and the trial court granted the motion, concluding that (1) *Apprendi* does not apply retroactively to any collateral attack on a sentence and (2) petitioner waived his claim when he pleaded guilty. Petitioner timely appeals.

## ANALYSIS

■ The question presented to the trial court in a section 2—615 motion is whether the allegations of the complaint, when viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. The standard of review for a section 2—615 dismissal is *de novo. Mosiman v. BMW Financial Services NA, Inc.*, 321 Ill. App. 3d 386, 389 (2001). For the following reasons, we conclude that the trial court correctly granted respondent's motion to dismiss petitioner's *habeas corpus* petition.

■ The *Apprendi* Court held that, "[o]ther than the fact of a prior conviction, any *fact* that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added.) *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

We initially address whether *Apprendi* applies to Illinois' first-degree murder statute as it existed at the time of the offense. We

agree with the special concurrence that " 'there is only one offense of murder in Illinois; no distinction is made between capital and non-capital murder.' " *People v. Davis*, 205 Ill. 2d 349, 372 (2002), quoting *People v. Brownell*, 79 Ill. 2d 508, 524 (1980). However, we respectfully disagree with the assertion that, because there is only one offense of murder, death is necessarily the "prescribed statutory maximum penalty" as that term is used in *Apprendi*. To a certain extent, *all* extended-term sentences are "prescribed" by Illinois' sentencing scheme. However, this alone does not render them constitutional under *Apprendi*. The murder statute provides that a natural life sentence or the death penalty may be imposed only if certain factual findings are made. *Apprendi* teaches that these facts are the functional equivalent of the elements of the offense and must be submitted to a jury and proved beyond a reasonable doubt. See, *e.g., People v. Joyner*, 317 Ill. App. 3d 93, 110 (2000). The unambiguous language of *Apprendi* does not limit that requirement to factual findings that lengthen the sentence only by increasing the classification of the offense: any fact that "increases the penalty" must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

*Davis* does not affect our decision here because it merely holds that, when a jury finds a defendant guilty of first-degree murder and eligible for the death penalty, his due process rights under *Apprendi* are not violated when the trial judge imposes the death penalty after considering additional aggravating and mitigating factors. *Davis*, 205 Ill. 2d at 374-75, citing *People v. Ford*, 198 Ill. 2d 68, 74 (2001). Neither *Davis* nor *Ford* decided whether death is always the "prescribed statutory maximum" penalty for first-degree murder as that term is used in *Apprendi. Davis*, 205 Ill. 2d at 374-75; *Ford*, 198 Ill. 2d at 73. Parenthetically, we note that the supreme court recently described a 100-year sentence for first-degree murder in another case as "an extended-term sentence." *Jackson*, 199 Ill. 2d at 301.

We conclude that, at the time petitioner committed the offense, first-degree murder was punishable by a nonextended term of 20 to 40 years' imprisonment. See Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—1(a)(1) (now 730 ILCS 5/5—8—1(a)(1)(a) (West 2000)). However, the murder was punishable by a sentence of natural life imprisonment if the trial judge found that the offense was "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" or that any of the death penalty qualifying factors of section 9—1(b) of the Criminal Code were present. See Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—1(a)(1) (now 730 ILCS 5/5—8—1(a)(1)(b) (West 2000)). The trial court found the "wanton cruelty" factor and two of the

death penalty qualifying factors (720 ILCS 5/9—1(b)(6), (b)(11) (West 2000)) and sentenced petitioner to natural life imprisonment without parole.

We now turn to petitioner's contention that he was denied the right to have the aggravating factors rendering him eligible for life imprisonment charged in the information, submitted to a jury, and proved beyond a reasonable doubt in compliance with *Apprendi*. Respondent asserts that petitioner waived any potential *Apprendi* claim when he "knowingly and voluntarily" pleaded guilty. In *Jackson* and *Hill*, the supreme court broadly held that an *Apprendi* challenge may not be raised on appeal after a defendant voluntarily pleads guilty. *Jackson*, 199 Ill. 2d at 297-98; *Hill*, 202 Ill. 2d at 153-54.

In *Jackson*, the defendant pleaded guilty to the Class 3 felony of aggravated battery for attacking the victim with a box cutter. The information did not mention the possibility of an extended sentence or of what the State might be required to prove for an extended sentence to be imposed. Before accepting the plea, the trial court admonished the defendant that she had been charged with aggravated battery, which normally carried a penalty of two to five years' imprisonment. However, the court also told her that she could be sentenced to an extended prison term of 5 to 10 years if the court found that the offense " 'was accompanied by exceptionally brutal or heinous behavior, indicative of wanton cruelty.' " *Jackson*, 199 Ill. 2d at 289. The defendant stated that she understood that she was giving up her right to any type of trial and was agreeing that the State had met its burden of proof.

The State presented the following factual basis for the guilty plea. The defendant had consumed a large amount of alcohol before attacking the victim through her open car window. The defendant slashed the victim's face and neck with a box cutter and continued the attack as the victim retreated. One of the wounds required more than 100 stitches. At the sentencing hearing, the State presented photographs of the victim's injuries and evidence that the victim received 150 stitches and was permanently blinded in one eye. The court found that the defendant's conduct was "brutal or heinous," and a 10-year extended prison term was imposed. *Jackson*, 199 Ill. 2d at 293.

Our supreme court held that the defendant "knowingly relinquished her rights" at issue in *Apprendi* when she pleaded guilty. *Jackson*, 199 Ill. 2d at 302. Therefore, she could not raise any *Apprendi*-based sentencing challenges on direct appeal from the plea. *Jackson*, 199 Ill. 2d at 295. The court noted that *Apprendi* merely clarified the well-established rights to a trial by jury and to proof of guilt beyond a reasonable doubt on all the elements that expose a de-

fendant to the particular statutorily prescribed sentence that is ultimately imposed. *Jackson*, 199 Ill. 2d at 302. When a defendant pleads guilty, he knowingly waives the right to have the State prove enhancing factors beyond a reasonable doubt because, by pleading guilty, the defendant excuses the State from proving *anything* beyond a reasonable doubt. *Jackson*, 199 Ill. 2d at 296.

In applying these principles to the facts, the supreme court noted that " 'the quantum of proof necessary to establish a factual basis for the plea is less than that necessary to sustain a conviction after a full trial.' " *Jackson*, 199 Ill. 2d at 298, quoting *People v. Barker*, 83 Ill. 2d 319, 327-28 (1980). The court then concluded that the factual basis and the evidence presented at the sentencing hearing permitted the trial judge to " 'reasonably reach the conclusion' " that the defendant committed an aggravated battery that was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty. *Jackson*, 199 Ill. 2d at 299, quoting *Barker*, 83 Ill. 2d at 327-28.

In *Hill*, the supreme court reaffirmed its holding in *Jackson* and applied it to the State's appeal from an order granting *habeas corpus* relief based on an *Apprendi*-based sentencing challenge. In May 1982, the defendant in *Hill* pleaded guilty to attempted murder, rape, and armed robbery, and the trial court imposed 50-year concurrent extended sentences after finding that the offenses were accompanied by " 'brutal or heinous behavior indicative of wanton cruelty.' [Citation.]" *Hill*, 202 Ill. 2d at 153. In August 2000, the defendant successfully petitioned for *habeas corpus* relief because he had already served three years more than the maximum nonextended term for the offenses. In agreement with *Jackson*, our supreme court held that the *Apprendi* claim was foreclosed by the defendant's guilty plea and that a discussion of any other issues was unnecessary. *Hill*, 202 Ill. 2d at 155.

■ This case is clearly controlled by *Jackson* and *Hill*. Here, the trial court expressly based petitioner's life sentence on the court's finding of three aggravating factors: (1) the victim was killed during an armed robbery, (2) the crime was exceptionally brutal and heinous, and (3) the crime was cold, calculated, and premeditated. None of these factors were alleged in the charging instrument. However, defendant was admonished that, if the trial judge found the armed robbery and "brutal and heinous" factors, defendant would be eligible for a life sentence. Moreover, the prosecutor included facts supporting the armed robbery factor in the factual basis for the plea.

When petitioner stated that he understood the admonitions and agreed that the factual basis was accurate, he effectively admitted that he had murdered the victim during an armed robbery. See *People v. Chandler*, 321 Ill. App. 3d 292, 297 (2001). Furthermore, petitioner

stated that he understood that the trial court's finding of either the armed robbery factor or the "brutal and heinous" factor could lead to a life sentence. Petitioner had a right to have a jury find these factors beyond a reasonable doubt, but he knowingly relinquished that right when he pleaded guilty. See *Jackson*, 199 Ill. 2d at 296.

Petitioner's life sentence was partially based on the trial court's express finding of an additional aggravating factor—that the murder was "cold and calculated." The State did not charge the factor, include it in the factual basis for the guilty plea, or admonish petitioner that a finding of the "cold and calculated" factor would render him eligible for a life sentence. It is well settled that, if a trial court's admonition is improper, the law of waiver does not apply because the defendant could not have "knowingly" and "intelligently" waived his constitutional rights. *People v. Evans*, 37 Ill. 2d 27, 32 (1967). However, a trial court need not admonish the defendant of all the elements of the crime before accepting a guilty plea. *Jackson*, 199 Ill. 2d at 296. Therefore, petitioner's rights were not violated when the life sentence was based, in part, on the trial court's finding of the "cold and calculated" factor. Accordingly, we hold that petitioner knowingly and voluntarily relinquished his right to a jury trial and proof beyond a reasonable doubt as to all three aggravating factors. We also conclude that the evidence in the record adequately supports the trial court's finding of each factor.

We note that petitioner could have preserved his *Apprendi* challenge at the guilty plea hearing. However, his failure to do so is fatal to his claim. See *Jackson*, 199 Ill. 2d at 297-98 (distinguishing *Apprendi* where both the defendant and the State preserved the sentencing issue before the defendant pleaded guilty). Moreover, petitioner does not contend that we may consider his *Apprendi* claim despite the waiver.

In a previous order, we granted the State's motion to cite *People v. McGee*, 328 Ill. App. 3d 930 (2002), as additional authority. We acknowledge that in *McGee* this court held that *Apprendi* does not apply retroactively to a collateral attack on a final criminal judgment. However, our holding here obviates the need to discuss the remaining issues of this case: (1) whether *Apprendi* claims are generally cognizable in a claim for discharge under section 10—124(2) of the Habeas Corpus Act and (2) whether *Apprendi* applies retroactively to a sentence challenged in a *habeas corpus* proceeding. We note that the supreme court declined to decide these issues in *Hill* because an analysis of the waiver issue adequately disposed of the case. *Hill*, slip op. at 5.

For these reasons, the order of the circuit court of Du Page County dismissing the petition for a writ of *habeas corpus* is affirmed.

Affirmed.

KAPALA, J., concurs.

JUSTICE McLAREN, specially concurring:

I specially concur because I believe that the majority opinion unnecessarily considers issues not required for resolving the issues raised on appeal.

Rather than address the merits of the defendant's claims, I believe we must first determine if Illinois' statutory scheme for murder comports with *Apprendi*. If it does, then only the maximum penalty of death, as delimited in *Apprendi*, is reviewable.

Illinois' statutory scheme for murder comports with *Apprendi* because it does provide that a jury must find, beyond a reasonable doubt, those elements that would or could result in the imposition of the death penalty. Illinois' statutory scheme grants greater rights to the defendant because it not only comports with the federal constitutional requirements but also grants the defendant the right to have a jury decide whether the maximum penalty of death should be imposed. In *People v. Davis*, 205 Ill. 2d 349 (2002), the court stated:

> "[T]he Supreme Court, in *Apprendi, specifically exclude[s] capital sentencing schemes* in which eligibility for the death penalty must be proven to a jury beyond a reasonable doubt from its scope:
>
> ' "*** What the cited cases hold is that, once a jury has found the defendant guilty of all the elements of an offense which carries as its maximum penalty the sentence of death, *it may be left to the judge to decide whether that maximum penalty*, rather than a lesser one, ought to be imposed... .' " " (Emphasis added.) *Davis*, 205 Ill. 2d at 376, quoting *Apprendi*, 530 U.S. at 497, 147 L. Ed. 2d at 459, 120 S. Ct. at 2366, quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 257 n.2, 140 L. Ed. 2d 350, 377 n.2, 118 S. Ct. 1219, 1237 n.2 (1998) (Scalia, J., dissenting, joined by Stevens, Souter, and Ginsburg, JJ.).

(Since *Apprendi* was concerned with punishments *beyond* the statutory maximum and it would seem impossible to impose a punishment beyond death, the exclusion of statutory schemes, including death as the maximum penalty, would appear to be logically rational.) Having determined that Illinois' scheme has passed muster, further review must cease because those schemes are excluded by *Apprendi*. See *Davis*, 205 Ill. 2d at 376.

There are presently two lines of cases suggesting that the maximum penalty for murder is 60 years' imprisonment and life imprisonment without parole, respectively. See *People v. Swift*, 322 Ill. App. 3d 127 (2001) (for 60 years); *People v. Rivera*, 333 Ill. App. 3d 1092 (2001) (for life imprisonment without parole). I submit that *Davis* preempts those lines of cases by declaring that there is only one statutory murder scheme and that it includes death as its maximum penalty. *Davis* stated unequivocally in quoting *People v. Brownell*, 79 Ill. 2d 508 (1980), "We noted that 'there is only one offense of murder in Illinois; no distinction is made between capital and non-capital murder.' [Citation.] Further, '[t]here is no offense of "aggravated," as opposed to simple, murder, in Illinois. *There is simply one murder statute, which includes within it a provision for the imposition of the death sentence.*' [Citation.]" (Emphasis added.) *Davis*, slip op. at 23.

Accepting *Davis*'s declaration that there is only one murder statute in this state and that statute imposes death, then it must follow that death is the maximum penalty. Since *Apprendi* has only one criterion for the review of murder that includes death as the maximum penalty and since Illinois grants greater rights than those required under the federal constitution, any further review or analysis is unnecessary and unwarranted regardless of the penalty imposed.

This interpretation is also consistent with the basic, underlying principle set forth in *Apprendi*. In *Apprendi*, the defendant pleaded guilty to a Class 2 firearm crime and was found guilty of a Class 1 hate crime. Most importantly, the sentence imposed on the hate crime was *greater* than any sentence that could have been imposed for the Class 2 crime to which he pleaded. In *Apprendi*, the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added.) *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63. In *Apprendi*, the one "fact," hate, was a fact which resulted in a new and different conviction with a new sentencing scheme that was beyond the statutory maximum penalty for the original crime. The fact involved in *Apprendi* resulted in a conviction of a different crime with a greater sentence. The factors considered in this case did *not* result in a new conviction of a different, more serious, crime with a penalty beyond the statutory scheme for the charged crime. I consider the application of *Apprendi* to this case and other such cases inappropriate. My belief is based upon the understanding of judicial precedent:

"A judicial precedent attaches a specific consequence to a detailed

set of facts in an adjudged case or judicial decision, which is then considered as furnishing the rule for the determination of a subsequent case involving identical or similar material facts and arising in the same court or a lower court in the judicial hierarchy." *Allegheny County General Hospital v. National Labor Relations Board*, 608 F.2d 965, 969-70 (3d Cir. 1979).

In this case the defendant pleaded guilty to murder, was found guilty of murder, and was *not* sentenced to the maximum penalty *let alone to a penalty beyond the prescribed statutory maximum for the offense of murder*. Thus, *Apprendi* is factually distinguishable and is not precedential by comparison of its underlying facts with the underlying facts in this case.

I, therefore, specially concur.